FILED BY _____ D.C.

SEP 1 0 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. **19-20574 CR-GAYLES**

**MAGISTRATE JUDGE**
**OTAZO-REYES**

18 U.S.C. § 1349
18 U.S.C. § 1347
18 U.S.C. § 2
18 U.S.C. § 982(a)(7)

**UNITED STATES OF AMERICA**

**vs.**

**JUAN JOSE MESA,**
**MADELAINE VARONA,**
**SANDRA CARDONA, and**
**SILVIA SALVATORI,**

       **Defendants.**
_____/

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times material to this Indictment:

### The Medicare Program

1.      The Medicare Program ("Medicare") was a federally funded program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services ("HHS"), through its agency, the Centers for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2.      Medicare was a "health care benefit program," as defined by Title 18, United States

Code, Section 24(b) and a Federal health care program, as defined by Title 42, United States Code, Section 1320a-7b(f).

3.      Medicare programs covering different types of benefits were separated into different program "parts."   "Part A" of the Medicare program covered certain eligible home health care costs for medical services provided by a home health agency ("HHA"), also referred to as a "provider," to persons who already qualified for Medicare and who additionally required home health services because of an illness or disability that caused them to be homebound.   Payments for home health care medical services were typically made directly to a Medicare-certified HHA or provider based on claims submitted to the Medicare program for qualifying services that had been provided to eligible beneficiaries.

4.      CMS did not directly pay Medicare Part A claims submitted by Medicare-certified HHAs.   CMS contracted with different private companies to administer the Medicare Part A program throughout different parts of the United States.   In the State of Florida, CMS contracted with Palmetto Government Benefits Administrators ("Palmetto").   As administrator, Palmetto was to receive, adjudicate and pay claims submitted by HHA providers under the Part A program for home health claims. Additionally, CMS separately contracted with companies in order to review HHA providers' claims data.   CMS first contracted with TriCenturion, a Program Safeguard Contractor.   Subsequently, on December 15, 2008, CMS contracted with SafeGuard Services, a Zone Program Integrity Contractor.   Both TriCenturion and SafeGuard Services safeguarded the Medicare Trust Fund by reviewing HHA providers' claims for potential fraud, waste, and/or abuse.

## Part A Coverage and Regulations

### Reimbursements

5.      The Medicare Part A program reimbursed 100% of the allowable charges for participating HHAs providing home health care services only if the patient qualified for home health benefits.   A patient qualified for home health benefits only if the patient:

(a)      was confined to the home, also referred to as homebound;

(b)      was under the care of a physician who specifically determined there was a need for home health care and established the Plan of Care ("P.O.C."); and

(c)      the determining physician signed a certification statement specifying that the beneficiary needed intermittent skilled nursing, physical therapy, speech therapy, or a continued need for occupational therapy; the beneficiary was confined to the home; that a POC for furnishing services was established and periodically reviewed; and that the services were furnished while the beneficiary was under the care of the physician who established the P.O.C.

### Record Keeping Requirements

6.      Medicare Part A regulations required HHAs providing services to Medicare patients to maintain complete and accurate medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting the actual treatment of patients to whom services were provided and for whom claims for reimbursement were submitted by the HHA. These medical records were required to be sufficiently complete to permit Medicare, through Palmetto and other contractors, to review the appropriateness of Medicare payments made to the HHA under the Part A program.

3

7.     Among the written records required to document the appropriateness of home health care claims submitted under Part A of Medicare were a: (i) P.O.C. that included the physician order, diagnoses, types of services/frequency of visits, prognosis/rehab potential, functional limitations/activities permitted, medications/treatments/nutritional requirements, safety measures/discharge plans, goals, and the physician's signature; and (ii) a signed certification statement by an attending physician certifying that the patient was confined to his or her home and was in need of the planned home health services.

8.     Additionally, Medicare Part A regulations required HHAs to maintain medical records of every visit made by a nurse, therapist, or home health aide to a patient.  The record of a nurse's visit was required to describe, among other things, any significant observed signs or symptoms, any treatment and drugs administered, any reactions by the patient, any teaching and the understanding of the patient, and any changes in the patient's physical or emotional condition.  The home health aide was required to document the hands-on personal care provided to the beneficiary as the services were deemed necessary to maintain the beneficiary's health or to facilitate treatment of the beneficiary's primary illness or injury.  These written medical records were generally created and maintained in the form of "skilled nursing progress notes" and "home health aide notes/observations."

9.     Medicare regulations allowed Medicare certified HHAs to subcontract home health care services to nursing companies, therapy staffing services agencies, registries, or groups (nursing groups), which would bill the certified home health agency.  The Medicare certified HHA would, in turn, bill Medicare for all services rendered to the patient. The HHA's professional

4

supervision over subcontracted-for services required the same quality controls and supervision as of its own salaried employees.

10. Medicare paid for physical therapy services by an HHA when a beneficiary was determined to be confined to the home or be homebound.

### The Defendants, Co-conspirators and Related Companies

11. All Excellent OT-PT Service, LLC. ("All Excellent") was a Florida limited liability company that did business in Miami-Dade County, purportedly providing physical and occupational therapy services to Medicare beneficiaries that required home health services.

12. Cruz Healthcare Corporation ("Cruz HHA") was a Florida corporation that did business in Miami-Dade County, purportedly providing home health care services to Medicare beneficiaries.

13. South General Services LLC ("SGS") was a Florida limited liability company doing business in Miami-Dade County.

14. Allure Professional Services Corporation ("Allure") was a Florida corporation doing business in Miami-Dade County.

15. Dr. Kristina Smith, Inc. was a Florida corporation purportedly providing physical therapy services to Medicare beneficiaries that required home health services.

16. KLEP Home Therapy Services LLC ("KLEP") was a Florida limited liability company that did business in Miami-Dade County, purportedly providing physical therapy services to Medicare beneficiaries that required home health services.

17. Ross Professional Consultant, LLC ("Ross") was a Florida limited liability company doing business in Miami-Dade County.

5

18.     Defendant **JUAN JOSE MESA,** a resident of Miami-Dade County, Florida, was the owner of All Excellent.

19.     Defendant **MADELAINE VARONA,** a resident of Miami-Dade County, Florida was the owner of Cruz HHA.

20.     Defendant **SILVIA SALVATORI,** a resident of Broward County, Florida, was the owner of SGS.

21.     Defendant **SANDRA CARDONA,** a resident of Miami-Dade County, Florida, was the owner of Allure.

22.     Kristina Rivas, a resident of Miami-Dade County, Florida, was a registered physical therapist ("RPT") and the owner of Dr. Kristina Smith, Inc.

23.     K.A., a resident of Broward County, Florida, was a RPT and the owner of KLEP.

24.     Rossana Ramirez, a resident of Miami-Dade County, Florida, was the owner of Ross.

### COUNT 1
### Conspiracy to Commit Health Care Fraud and Wire Fraud
### (18 U.S.C. § 1349)

1.      Paragraphs 1 through 24 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      From on or about September 3, 2013, and continuing through at least on or about March 9, 2017, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**JUAN JOSE MESA,**
**MADELAINE VARONA,**
**SILVIA SALVATORI, and**
**SANDRA CARDONA,**

6

did knowingly and willfully combine, conspire, confederate, and agree with each other, K.A.,

Kristina Rivas, and others known and unknown to the Grand Jury, to commit offenses against the

United States, that is:

a.    to knowingly and willfully execute a scheme and artifice to defraud a health care

benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that

is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations,

and promises, money and property owned by, and under the custody and control of, said health

care benefit program, in connection with the delivery of and payment for health care benefits, items,

and services, in violation of Title 18, United States Code, Section 1347; and

b.    to knowingly and with the intent to defraud, devise and intend to devise a scheme

and artifice to defraud and for obtaining money and property by means of materially false and

fraudulent pretenses, representations, and promises, knowing the pretenses, representations, and

promises were false and fraudulent when made, and for the purpose of executing the scheme and

artifice, did knowingly transmit and cause to be transmitted by means of wire communication in

interstate and foreign commerce, certain writings, signs, signals, pictures and sounds, in violation

of Title 18, United States Code, Section 1343.

## Purpose of the Conspiracy

3.    It was a purpose of the conspiracy for the defendants and their co-conspirators to

unlawfully enrich themselves by, among other things: (a) submitting and causing the submission

of false and fraudulent claims to Medicare; (b) concealing the submission of false and fraudulent

claims to Medicare; (c) concealing the receipt of fraud proceeds; and (d) diverting the fraud

proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud.

7

## **Manner and Means of the Conspiracy**

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things:

4.     **JUAN JOSE MESA** and **MADELAINE VARONA** paid licensed physical and occupational therapists, including K.A. and Kristina Rivas, to sign patient evaluation, re-evaluation and discharge forms, falsely and fraudulently certifying that they had provided physical therapy services to Medicare beneficiaries when, in fact, they had not provided physical therapy services to Medicare beneficiaries.

5.     **MADELAINE VARONA** paid kickbacks to Rosanna Ramirez in exchange for referring Medicare beneficiaries to Cruz HHA that **VARONA** knew did not qualify as "homebound," and that did not need home health services.

6.     **SILVIA SALVATORI** and **SANDRA CARDONA**, who were not licensed to provide physical therapy services, accepted payment from K.A. in exchange for obtaining signed patient visitation forms from Medicare beneficiaries used to submit false and fraudulent claims.

7.     **MADELAINE VARONA, JUAN JOSE MESA, SILVIA SALVATORI, SANDRA CARDONA,** and their co-conspirators filed and caused to be filed, through interstate wire communications, false and fraudulent claims with Medicare seeking payment for the costs of home health services that were not provided to Medicare beneficiaries and/or not provided by properly licensed physical and occupational therapists.

8.     As a result of these false and fraudulent claims, Cruz HHA and other Miami-Dade home health agencies received over-payments from Medicare.

8

9.      **MADELAINE VARONA, JUAN JOSE MESA, SILVIA SALVATORI,**

**SANDRA CARDONA** and their co-conspirators used the proceeds of the fraud for themselves,

for others and to further the fraud.

All in violation of Title 18, United States Code, Section 1349.

**COUNTS 2-7**
**Health Care Fraud**
**(18 U.S.C. § 1347)**

1.      Paragraphs 1 through 12, 18, and 19 of the General Allegations section of this

Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      From on or about September 3, 2013, and continuing through at least on or about

March 9, 2017, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the

defendants,

**JUAN JOSE MESA and**
**MADELAINE VARONA,**

in connection with the delivery of and payment for health care benefits, items, and services, did

knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health

care benefit program affecting commerce, as defined by Title 18, United States Code, Section

24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses,

representations, and promises, money and property owned by, and under the custody and control

of, said health care benefit program.

**Purpose of the Scheme and Artifice**

3.      It was the purpose of the scheme and artifice for the defendants and their

accomplices to unlawfully enrich themselves by, among other things: (a) submitting and causing

the submission of false and fraudulent claims to Medicare; (b) concealing the submission of false

9

and fraudulent claims to Medicare; (c) concealing the receipt of fraud proceeds; and (d) directing the fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud.

## **Manner and Means of the Scheme and Artifice**

4.      The manner and means by which the defendants and their accomplices sought to accomplish the scheme and artifice included, among other things:

5.      **JUAN JOSE MESA** and **MADELAINE VARONA** paid licensed physical and occupational therapists, including K.A. and Kristina Rivas, to sign patient evaluation, re-evaluation and discharge forms, falsely and fraudulently certifying that they had provided physical therapy services to Medicare beneficiaries when, in fact, they had not provided physical therapy services to Medicare beneficiaries.

6.      **MADELAINE VARONA** paid kickbacks to Rosanna Ramirez in exchange for referring Medicare beneficiaries to Cruz HHA that **VARONA** knew did not qualify as "homebound," and that did not need home health services.

7.      One or more accomplices, who were not licensed to provide physical therapy services, accepted payment from K.A. in exchange for obtaining signed patient visitation forms from Medicare beneficiaries used to submit false and fraudulent claims.

8.      **MADELAINE VARONA, JUAN JOSE MESA,** and one or more accomplices filed and caused to be filed, through interstate wire communications, false and fraudulent claims with Medicare seeking payment for the costs of home health services that were not provided to Medicare beneficiaries and/or not provided by properly licensed physical and occupational therapists.

10

9.      As a result of these false and fraudulent claims, Cruz HHA and other Miami-Dade home health agencies received over-payments from Medicare.

10.     **MADELAINE VARONA, JUAN JOSE MESA,** and their accomplices used the proceeds of the fraud for themselves, for others and to further the fraud.

### Acts in Execution or Attempted Execution of the Scheme and Artifice

11.     On or about the dates set forth below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants so identified in each count, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program affecting commerce, that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of said health care benefit program, in that the defendants, through All Excellent and Cruz HHA, caused the submission of false and fraudulent claims to Medicare, seeking reimbursement for the cost of physical therapy services that were not provided or not provided by licensed therapists as claimed:

| Count | Defendant(s) | Medicare Beneficiary | Approx. Date of Claim | Medicare Claim Number | Approx. Amount Claimed |
|---|---|---|---|---|---|
| 2 | **MADELAINE VARONA and JUAN JOSE MESA** | A.H. | 9/08/2015 | 21525103297707FLR | $5,104 |
| 3 | **MADELAINE VARONA and JUAN JOSE MESA** | V.G. | 9/08/2015 | 21525103297107FLR | $5,104 |
| 4 | **MADELAINE VARONA and JUAN JOSE MESA** | A.H. | 2/24/2016 | 21605501418507FLR | $4,714 |

| Count | Defendant(s) | Medicare Beneficiary | Approx. Date of Claim | Medicare Claim Number | Approx. Amount Claimed |
|-------|--------------|----------------------|------------------------|------------------------|-------------------------|
| 5 | **MADELAINE VARONA and JUAN JOSE MESA** | J.P. | 2/24/2016 | 21605501437907FLR | $4,714 |
| 6 | **MADELAINE VARONA and JUAN JOSE MESA** | A.H. | 8/15/2016 | 21621403761907FLR | $4,620 |
| 7 | **MADELAINE VARONA** | L.A. | 10/24/2016 | 21629802448807FLR | $4,714 |

In violation of Title 18, United States Code, Sections 1347 and 2.

## **FORFEITURE**
### **(18 U.S.C. § 982)(a)(7))**

1.     The allegations contained in Counts 1 through 7 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of certain property in which defendants **JUAN JOSE MESA, MADELAINE VARONA, SILVIA SALVATORI, and SANDRA CARDONA** have an interest.

2.     Upon conviction of a federal healthcare offense, or a conspiracy to commit a federal healthcare offense, as defined by Title 18, United States Code, Section 24, as alleged in this Indictment, the defendant so convicted shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such violation.

3.     The property, which is subject to criminal forfeiture, includes, but is not limited to, the following:

a forfeiture money judgment against each defendant so convicted in an amount equal in

value to the property, real or personal, obtained by the convicted defendant, which constitutes, or was derived, directly or indirectly, from gross proceeds traceable to such offense.

All pursuant to Title 18, United States Code, Section 982(a)(7), and the procedures set forth at Title 21, United States Code, Section 853, as made applicable through Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

_____

FOREPERSON


_____
ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY


_____
KEVIN J. LARSEN
ASSISTANT UNITED STATES ATTORNEY

13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

JUAN JOSE MESA,
MADELAINE VARONA,
SANDRA CARDONA and
SILVIA SALVATORI,

_____Defendants._____/

CASE NO._____

**CERTIFICATE OF TRIAL ATTORNEY\***

**Superseding Case Information:**

**Court Division**: (Select One)

| | | |
|---|---|---|
| ✓ | Miami | Key West |
| | FTL | WPB |

New defendant(s)          Yes _____  No _____
Number of new defendants  _____
Total number of counts    _____

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:     (Yes or No)     Yes
   List language and/or dialect     Spanish

4. This case will take  10  days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)                    (Check only one)

   | | | | | |
   |---|---|---|---|---|
   | I | 0 to 5 days | | Petty | |
   | II | 6 to 10 days | ✓ | Minor | |
   | III | 11 to 20 days | | Misdem. | |
   | IV | 21 to 60 days | | Felony | ✓ |
   | V | 61 days and over | | | |

6. Has this case previously been filed in this District Court?     (Yes or No)     No ___
   If yes: Judge                                    Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?     (Yes or No)     No ___
   If yes: Magistrate Case No.                     _____
   Related miscellaneous numbers:                  _____
   Defendant(s) in federal custody as of           _____
   Defendant(s) in state custody as of             _____
   Rule 20 from the District of                    _____

   Is this a potential death penalty case? (Yes or No)     No ___

7. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)?          Yes _____     No ✓

8. Does this case originate from a matter pending in the Northern Region U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?          Yes _____     No ✓

_____
KEVIN J. LARSEN
ASSISTANT UNITED STATES ATTORNEY
FL Bar No. A5501050

\*Penalty Sheet(s) attached

REV 8/13/2018

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name:** JUAN JOSE MESA

**Case No**:

Count #: 1

Conspiracy to Commit Health Care Fraud and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**:     Twenty (20) Years' Imprisonment

Counts #: 2-6

Health Care Fraud

Title 18, United States Code, Section 1347

**\*Max. Penalty:**     Ten (10) Years' Imprisonment as to Each Count

Count #:

**\*Max. Penalty:**

Count #:

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: MADELAINE VARONA

**Case No**: _____

Count #: 1

Conspiracy to Commit Health Care Fraud and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**:     Twenty (20) Years' Imprisonment

Counts #: 2-7

Health Care Fraud

Title 18, United States Code, Section 1347

**\*Max. Penalty:**     Ten (10) Years' Imprisonment as to Each Count

Count #:

_____

_____

**\*Max. Penalty:**

Count #:

_____

_____

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

<u>PENALTY SHEET</u>

**Defendant's Name**:   SANDRA CARDONA

**Case No**:

Count #: 1

Conspiracy to Commit Health Care Fraud and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**:        Twenty (20) Years' Imprisonment

Count #:

**\*Max. Penalty:**

Count #:

**\*Max. Penalty:**

Count #:

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution,
special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**: SILVIA SALVATORI

**Case No**: _____

Count #: 1

Conspiracy to Commit Health Care Fraud and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**: Twenty (20) Years' Imprisonment

Count #:

**\*Max. Penalty:**

Count #:

**\*Max. Penalty:**

Count #:

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution,
special assessments, parole terms, or forfeitures that may be applicable.**